UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUSTIN R. STAMPS,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,
_____/

Case No. 1:15-CV-0557

HON. PAUL L. MALONEY

**OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Justin Stamps seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*,

745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 26 years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.28, 62.) He completed the ninth grade, and was previously employed as a construction worker and plumber's apprentice. (PageID.64, 93, 257.) Plaintiff applied for benefits on June 27, 2012, alleging that he had been disabled since February 4, 2009, due to a traumatic brain injury, seizure disorder, cognitive deficits, memory impairment, cluster headaches, right calcaneal fracture, L4 compression fracture,

transected aorta, depression, and sensitivity to light and sound. (PageID.103–04, 206–07.) Plaintiff's application was denied on November 5, 2012, after which time he requested a hearing before an ALJ. (PageID.143–48, 156–58.) On October 17, 2013, Plaintiff appeared with his counsel before ALJ Carol Guyton for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.53–100.) In a written decision dated November 21, 2013, the ALJ determined that Plaintiff was not disabled. (PageID.28–52.) On March 26, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.22–27.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well

---

[1] 
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Guyton determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. (PageID.33.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) closed head injury from 2009 motor vehicle accident; (2) right calcaneal fracture, s/p open reduction internal fixation; (3) mild degenerative changes of the lumbar spine, s/p L5 fracture; and (4) affective disorder. (PageID.33.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.34–36.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b). He could lift and carry 20 pounds occasionally and 10 pounds frequently; and in an 8-hour workday with normal breaks, he could stand and walk for a total of 2 hours and could sit for a total of 6 hours with a sit/stand option as needed. He could do no pushing or pulling with the right lower extremity; could occasionally climb ramps and stairs, balance, kneel, crouch and crawl, except he could do not squatting or stooping; could do no climbing of ladders, ropes or scaffolds; and should not work around hazardous machinery or at unprotected heights. He would be limited to simple

>routine tasks involving no more than simple short instructions and simple work-related decisions with few workplace changes and, when changes occur, they should be introduced gradually; and he should have no contact with the general public.

(PageID.36.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. (PageID.45.)

At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that there existed approximately 8,000 jobs in the state of Michigan and 150,000 in the nation in the positions of assembler, packer, and inspector that an individual similar to Plaintiff could perform. (PageID.97.) This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from February 4, 2009, through November 21, 2013. (PageID.54.)

## DISCUSSION

Plaintiff presents the following Statement of Errors:

1. The ALJ committed reversible error by finding that Plaintiff could perform light work;

2. The ALJ committed reversible error by improperly weighing the medical evidence in this case;

3. The ALJ committed reversible error by failing to find that some of Plaintiff's impairments were not [sic] severe and by failing to consider them in Plaintiff's RFC; and

5

      4.      The ALJ committed reversible error by failing to justify her RFC correctly by relying upon improper boilerplate language.

(PageID.879.) The Court will discuss the issues below.²

**1.**

As noted above, the ALJ determined that Plaintiff had the capacity to perform a limited range of light work. Plaintiff could not perform the full range of light work because, among other things, the ALJ determined Plaintiff could only stand and walk for two hours in an 8-hour workday. (PageID.36.) Plaintiff claims that this determination is contrary to relevant Social Security Rulings. (PageID.880.)

The Court disagrees with Plaintiff that an RFC that includes a limitation for only two hours of standing or walking during the workday is incompatible with a finding that he can perform a limited range

---

²In his reply brief, Plaintiff's counsel claims that he was unable to fully develop his argument and that Plaintiff was deprived due process, due to the Court's order affirming the decision of the Magistrate to enforce page limits. (PageID.906.) Plaintiff's initial brief contains fifteen pages of detailed factual background that, the undersigned notes, appears to be counsel's general practice in social security cases. While it is of course counsel's prerogative, subject to relevant rules, to structure his brief how he wishes, the Court notes that it may be wise in the future to retain more space for legal analysis. Moreover, Plaintiff's counsel overlooks the fact that the reason his motion for excess pages was denied in the first place was due to his failure to file a certificate setting forth his efforts to comply with W.D. Mich. L. Civ. R. 7.1(d). The Magistrate afforded counsel an opportunity to correct this failure and seek concurrence from the Commissioner, and warned that failure to comply with the local rule would result in his motion being dismissed. (PageID.851) Instead of following the Magistrate's order, however, and after having been advised of the consequences of noncompliance, counsel merely reiterated his initial request for more pages. Accordingly, the Magistrate denied counsel's motion and ordered him to file a brief that did not exceed twenty pages. (PageID.855–86.) The undersigned later affirmed the Magistrate's decision. (PageID.860–62.) Based on the above, such does not violate due process. *See Thomason v. Ludwick*, No. 2:09–11012, 2011 WL 2693361, at *13 (E.D.Mich. July 12, 2011) (*citing Watts v. Thompson*, 116 F.3d 220, 224 (7th Cir.1997)) ("enforcing page limits and other restrictions on litigants is rather ordinary practice that does not violate due process"). If, in the future, Plaintiff's counsel desires to file briefs in excess of the Court's practice regarding page limits, he is advised to first comply with this district's local rules.

of light work. It is true, as Plaintiff states, that SSR 83-10 defines light work as including "a good deal of walking or standing." SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983).[3] However that ruling also notes that "[a] job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls." 1983 WL 31251, at *5–6. While Plaintiff may be unable to perform those jobs that involve a good deal of walking or standing, Plaintiff does not argue he is precluded from performing those jobs involving sitting most of the time with pushing and pulling. It is true that the RFC precludes Plaintiff from pushing and pulling with his right lower extremity, but it includes no restrictions on pushing and pulling with his left lower extremity or upper extremity. The Court finds that the ALJ's RFC determination reasonably includes those jobs that involve "sitting most of the time" with pushing and pulling of various controls. Other Courts have similarly concluded that an RFC for two hours of standing or walking is not inconsistent with SSR 83-10. *Freeman v. Colvin*, No. 3:15-CV-216-HBG, 2016 WL 697140, at *5 (E.D. Tenn. Feb. 19, 2016) (Guyton, M.J.) (collecting cases); *see also Wierenga v. Comm'r of Soc. Sec.*, No. 1:12-CV-0022, 2015 WL 5608222, at *7 (W.D. Mich. Sept. 23, 2015) (Carmody, M.J.). After reviewing the ALJ's opinion and the jobs cited by the vocational expert that Plaintiff would be able to perform (PageID.97), the Court finds the ALJ's determination Plaintiff could perform a significant number of jobs under a RFC for a limited range of light work is supported by substantial evidence. Accordingly, Plaintiff's first claim of error is rejected.

---

[3]Social Security Rulings (SSR's) "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 498 (6th Cir. 2006).

**2.**

Plaintiff next claims the ALJ erred in several respects regarding the medical evidence in the record. After review, the Court finds no basis for disturbing the ALJ's conclusion.

Plaintiff's first argument is that the ALJ never evaluated recent medical evidence including office records from Dr. Craig Kuesel, Dr. Nicholas Loafman, and Mr. Bradley Smith. Plaintiff's counsel claims that the ALJ "ignore[d]" and "never evaluated" the above evidence. (PageID.880–81.) The Court disagrees. The ALJ made her RFC determination after careful consideration of the "entire record." (PageID.36.) It is well accepted that an ALJ need not discuss every piece of evidence in order to consider it. *See Kornecky,* 167 F. App'x at 507–08 ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal quotation marks omitted). Moreover, in this case it is demonstrably not the case that the ALJ ignored this evidence. Indeed the ALJ explicitly addressed the medical records Plaintiff complains the ALJ ignored. At step two, for example, the ALJ discussed the two treatment notes from Dr. Kuesel. (PageID.34.) And at step four, the ALJ addressed the records from Dr. Loafman and Mr. Smith. (PageID.40, 42.)[4] The Court finds the ALJ properly considered this evidence.

Because Plaintiff cannot succeed here, Plaintiff turns, in his reply brief, to an argument that the ALJ was required to incorporate Mr. Smith's assessment into his RFC, specifically Mr. Smith's statement that Plaintiff would need "ongoing support" to perform any work. (PageID.630, 907.) Even assuming Mr. Smith has offered an opinion more restrictive than the RFC, the Court finds no error. As

---

[4]As the Commissioner points out, it appears the ALJ make a scrivener's error in citing to Mr. Smith's records. Mr. Smith's records appear at Exhibit 9, not Exhibit 5. The Court does not find this to be an error requiring reversal.

Plaintiff admits, Mr. Smith was a certified rehabilitation counselor. (PageID.906.) Accordingly, he does not qualify as an acceptable source, but rather is an other source. *See* SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (including rehabilitation counselors as "other sources"). Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See id.* at *1; *see also Hickox v. Comm'r of Soc. Sec.*, No. 1:09-cv-343, 2011 WL 6000829, at *4 (W.D. Mich. Nov. 30, 2011). The ALJ is only required to "consider" evidence from other sources, such as Mr. Smith. SSR 06-03p, 2006 WL 2329939, at * 2, 6. This is not a demanding standard, and it was easily met here. Under SSR 06–3p, opinions from other medical sources, such as rehabilitation counselors, "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." *See id.* at *3. The Court concludes the ALJ's discussion of Mr. Smith's assessment was consistent with SSR 06–3p.

Plaintiff next argues that under *Johnson v. Commissioner of Social Security*, 652 F.3d 646 (6th Cir. 2011), the ALJ was required to give more weight to the opinion of Dr. Danyo than the opinion of non-reviewing agency consultants. On December 15, 2010, Dr. Daniel Danyo indicated that Plaintiff was "permanently disabled from returning to work." (PageID.654.) On February 25, 2011, Dr. Manyo modified his opinion to indicate that Plaintiff was "permanently disabled from a return to gainful employment." (PageID.650.) The ALJ indicated she agreed with the conclusion that Plaintiff could not return to his past work, but disagreed that Plaintiff could not return to any work. (PageID.44.) In this, the ALJ properly discounted Dr. Danyo's opinion because an ALJ is not required to rely on medical opinions

9

concluding that a person is, or is not, disabled. This is because such opinions are those concerning an issue that is reserved to the Commissioner. *See* 20 C.F.R. § 1527(d). For that reason, Plaintiff's reliance on *Johnson* is misplaced. *See Jackson v. Comm'r of Soc. Sec.*, No. 1:14-CV-1157, 2015 WL 7444629, at *3 (W.D. Mich. Nov. 23, 2015).

Plaintiff also argues the ALJ erred by giving great weight to the opinion of Dr. Peter Nowotarski, but failing to incorporate his "permanent restriction" that Plaintiff could not stand for more than twenty minutes. (PageID.882.) It is true that on July 23, 2009, Dr. Nowotarski imposed this work restriction on Plaintiff. (PageID.487.) But it was by no means permanent. Rather on November 12, 2009, less than four months later, Dr. Nowotarski modified the restrictions to include no prolonged standing, stooping, working at heights, and carrying greater than thirty pounds. (PageID.485.) It was this opinion that the ALJ gave great weight to, and Plaintiff does not argue that this opinion is more restrictive than the RFC. The RFC included a limitation for an "as needed" sit stand option, and indeed contained a more restrictive carrying requirement than Dr. Nowotarski provided. To the extent that Plaintiff argues the ALJ failed to properly consider the earlier opinion, the Court finds this to be harmless error at most. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004). As Dr. Nowatarski replaced this opinion only a few months later, the opinion does not demonstrate an impairment lasting at least twelve months necessary to find disability. *See* 20 C.F.R. § 404.1527.

Finally, Plaintiff argues the ALJ failed to properly consider Dr. Downey's opinion. Dr. Downey, a psychologist, evaluated Plaintiff at a one time consultation on October 29, 2012.

(PageID.704.)[5]  On that date, Dr. Downey assigned Plaintiff a GAF score of 47, and concluded that Plaintiff "seems capable of understanding and carrying out very simple instructions . . . . However, he may struggle with consistently performing tasks or performing activities that are more complex and/or detailed in nature due to his deficient concentration, pain issues, working memory deficits, and mood disturbances. He appears capable of interacting with others in a reliable and predictable manner." (PageID.704.) As an initial matter it is not true, as Plaintiff asserts, that the ALJ "fail[ed] to give any credence" to the opinion of Dr. Downey.  Rather the ALJ noted she in fact agreed with the opinion that Plaintiff could only understand and carry out simple instructions, but could interact with others.  What the ALJ did not agree with is the GAF score that Dr. Downey assigned to Plaintiff. Such a score "reflects the assessor's opinion that the subject has serious symptoms or serious impairment of social or occupational functioning." *Kornecky*, 167 F. App'x at 511.  The ALJ rejected this portion of Dr. Downey's opinion, noting that it was inconsistent with the Plaintiff's activities of daily living. (PageID.44.) Indeed, despite his impairments, Plaintiff stated he was able to undertake a wide variety of daily activities.  For example, Plaintiff noted he was able to care for his children and dog. (PageID.293.) He had no problem with his personal care, and did not need reminders.  (PageID.293–94.)  He was able to mow his yard and do small cleaning. (PageID.294.) He could drive a car, go out alone, shop, and handle financial matters. (PageID.295.) He visited with others at his house, and took his kids to school and practices. (PageID.296.) As the Sixth Circuit has recognized, a GAF score "may help an ALJ assess mental RFC, but it is not raw medical data."

---

[5]Plaintiff appears to argue that Dr. Downey should be treated as a treating physician for purposes of the treating physician rule. (PageID.882.) The Court declines to do so.  Since Dr. Downey was only a consulting psychologist, who examined Plaintiff on only one occasion, the ALJ was not "under any special obligation to defer to [the doctor's] opinion or to explain why [she] elected not to defer to it." *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 744 (6th Cir. 2011).

*Id.* at 503 n.7. Accordingly, the ALJ is not required "to put stock in a GAF score in the first place." *Id.* at 511 (*citing Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 241 (6th Cir. 2002)). The ALJ did not err, therefore, in noting that the record, including Plaintiff's activities of daily living, did not support the notion that Plaintiff suffers "serious" emotional symptoms or impairment in functioning.

For all the above reasons, Plaintiff's second claim of error is rejected.

### 3.

Plaintiff next claims that the ALJ "never considered" several impairments that he had, including cluster headaches, dizziness, agoraphobia, and low IQ. (PageID.882.) Plaintiff is incorrect, however, that the ALJ did not consider these impairments. Rather the ALJ explicitly discussed Plaintiff's headaches, dizziness, and agoraphobia at step two, and found that they were not severe impairments. (PageID.33–34.) At step four, the ALJ discussed Plaintiff's dizziness, headaches and IQ score of 77, noting that the IQ score likely declined due to Plaintiff's past injury. (PageID.37–38.)

Plaintiff appears to argue the ALJ was required to find these to be severe impairments. (PageID.882.) This is not a basis for disturbing the ALJ's decision. A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Upon determining that a claimant has one severe impairment at step two of the sequential evaluation, the ALJ must continue with the remaining steps in the evaluation. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Id.* An ALJ can consider such non-severe conditions in determining the claimant's RFC. *Id.* "The fact that some of [the claimant's]

impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008). Here, the ALJ found that Plaintiff had a number of severe impairments. (PageID.33) The ALJ's failure to include additional severe impairments at step two is legally irrelevant.

Finally, to the extent Plaintiff claims the ALJ failed to consider these impairments in making her RFC determination, Plaintiff cannot succeed. As noted, Plaintiff expressly considered Plaintiff's IQ, headaches, and dizziness in her RFC discussion. Moreover, the ALJ noted her obligation to "consider all of the claimant's impairments, including impairments that are not severe" and that she had "considered all symptoms" in making her RFC determination. (PageID.32, 37.) Given these statements, the ALJ was not required to further elaborate upon her thought processes. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir.1987); *see also Simons v. Barnhart* 114 F. App'x 727, 734 (6th Cir. 2004) (The ALJ stated that he was obligated to consider all the claimant's symptoms, found that the claimant had an impairment or combination of impairments that were severe, and the lack of a separate discussion of each of the claimant's multiple impairments "does not mean that the [ALJ] did not consider their combined effect."). Accordingly, this claim of error is rejected.[6]

---

[6]Plaintiff ends this claim with a one sentence argument that the ALJ did not consider the side effects of his medications when determining the RFC. (PageID.883.) At the hearing, Plaintiff stated that he experienced side effects of having to use the bathroom, stomach pain, and "sometimes vomiting." (PageID.69.) However, Plaintiff's bare assertion that the ALJ failed to give sufficient consideration to his testimony is insufficient to show reversible error here. "'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) (*quoting McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)). Anticipating Plaintiff's response that he would have developed this argument more fully had he been allowed to file a brief with more pages, the Court notes that Plaintiff's brief includes half a page of empty space. (PageID.878.) Such could have been used to develop this

**4.**

Finally, Plaintiff has raised the now-familiar objection that the ALJ used flawed "boilerplate language" to evaluate his credibility, when the ALJ stated that:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible for the reasons explained in this decision.

(PageID.43.) Plaintiff relies on the Seventh Circuit decision in *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), which criticized the Agency's use of this language in ALJ decisions:

> One problem with the boilerplate is that the assessment of the claimant's "residual functional capacity" (the bureaucratic term for ability to work) comes later in the administrative law judge's opinion, not "above"—above is just the foreshadowed conclusion of that later assessment. A deeper problem is that the assessment of a claimant's ability to work will often (and in the present case) depend heavily on the credibility of her statements concerning the "intensity, persistence and limiting effects" of her symptoms, but the passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The administrative law judge based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be. In this regard we note the tension between the "template" and SSR 96–7p(4), www.ssa.gov/OP_Home/rulings/di/01/SSR96–07–di–01.html (visited Jan. 4, 2012), which states that "an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." The applicant's credibility thus cannot be ignored in determining her ability to work (her residual functional capacity, in SSA-speak).

argument. Accordingly, this argument is rejected.

*Id.* at 645–46. The court also opined that "[t]he Social Security Administration had better take a close look at the utility and intelligibility of its 'templates.'" *Id.* at 646.

Notwithstanding the Seventh Circuit's criticism of this "opaque boilerplate," *id.* at 644, that court did not summarily reverse the ALJ's decision for using the boilerplate, *see id.* at 649. Rather, the court considered the ALJ's specific reasons for rejecting the ALJ's credibility determination. *See id.* at 646 ("[t]he administrative law judge based his doubts about Bjornson's credibility on his assessment of the medical reports or testimony of the three doctors whom we've mentioned"). Similarly, the ALJ's use of the language in this case is not, in and of itself, grounds for reversal because the ALJ also gave specific reasons for rejecting Plaintiff's credibility, pointing out: Plaintiff's activities of daily living, his failure to take prescribed pain medication and lack of epileptic activity on EEG scans. (PageID.43.) Accordingly, Plaintiff's claim of error should be denied.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.


Dated:  August 29, 2016                                     /s/ Paul L. Maloney
                                                            PAUL L. MALONEY
                                                            United States District Judge